WILDER S. THURSTON *vs.* ELHANAN WHITNEY & others

One who does not believe in the existence of God is not a competent witness.

The rejection of a witness, as incompetent, by reason of his want of religious belief, is not a violation of the second article of the bill of rights.

An objection to the competency of a witness, on the ground of a want of religious belief, may be proved by the testimony of witnesses.

ON the trial of this action, which was in the court of common pleas, before *Merrick*, J., the defendants having called and offered a witness to be sworn, the plaintiff objected to his competency, on the ground of a want of religious belief; and offered to produce witnesses to prove, that the witness in question did not believe in the existence of God, or in a future state of rewards and punishments. The presiding judge declined to hear the testimony, so offered by the plaintiff, and overruled his objection to the competency of the witness; who was thereupon sworn and testified on the trial. The jury returned a verdict for the defendants, and the plaintiff alleged exceptions.

*F. H. Dewey*, for the plaintiff, referred to 1 Greenl. Ev. §§ 368, 369; *Wakefield* v. *Ross*, 5 Mason, 18; *Norton* v. *Ladd*, 4 N. H. 444; *Arnold* v. *Arnold*, 13 Verm. 362; *Curtis* v. *Strong*, 4 Day, 51; *Jackson* v. *Gridley*, 18 Johns. 98; *Cubbison* v. *M'Creary*, 2 Watts & Serg. 262; to show that no person is a competent witness, who does not believe in the existence of God. A belief in a future state of rewards and punishments is equally essential; though whether the belief must be of such a state in this world, or in the next, is perhaps not settled. 1 Greenl. Ev. § 369.

*N. Wood*, for the defendants, argued, that the exclusion of the witness, on the ground of the objection taken to his competency, would have been a contravention of the second article of the bill of rights, which declares, that "no subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping God in the manner and season most agreeable to the dictates of his own conscience; or for his religious

Thurston *v.* Whitney & others.

profession or sentiments; provided he doth not disturb the public peace, or obstruct others in their religious worship."

The general ground, upon which a witness is heard in a court of justice, is, that he is a person worthy of belief; and if he is rejected, it is because he is not deemed worthy of belief. When, therefore, the evidence of any one is refused, on the ground that his religious faith is not such as to entitle him to be believed, this is a direct imputation upon his character for truth, and cannot but tend to injure his feelings, to impair his self-respect, and to create in him an opinion that he is degraded. If this be not to hurt, molest, or restrain one in his person and liberty, it must be because it is the physical body only that constitutes the person of a man.

The giving of evidence by a witness is an important, sometimes a vital, service to the party calling him; a service which the witness is under a moral and religious as well as civil obligation to render; and the performance of which, as a high moral duty, may well be called a right or privilege If this be the true character of the function of a witness, then whatever prevents one from performing it is a restraint upon his person and liberty.

It has been argued, that the refusal to allow a person to testify, because of his religious belief, only affects and injures the party calling him, and not in any manner the witness himself; and it is conceded, that such objection cannot be made against one who is seeking his own rights in a court of justice; that is to say, for example, an atheist cannot be prevented, by reason of his want of belief, from making a complaint on oath, to a magistrate, or making oath to an answer in chancery, or from making an affidavit, in his own case, to the absence of a witness, or the loss of a deed. 1 Greenl. Ev. § 370, note. This concession, if not made, is at all events required, for the reason, that to reject the testimony of an atheist, in the cases mentioned and others of the same kind, would be an infringement of the above mentioned clause of the constitution. But so to limit the operation and extent of that clause, is not only to give it a very narrow and

jesuitical construction, but to reflect upon the good sense and moral perceptions of the framers of the constitution. Upon this ground, it would follow, that no person can himself be injured for any strange, heretical, or outrageous sentiments, which he may entertain on the subject of religion ; but that all others, not in the least responsible for his sentiments, may suffer in their property, liberty, or even their lives, by being deprived of his testimony.

It is singular, perhaps, that the court have never been called upon to give a construction to this clause of the bill of rights, as bearing upon the competency of witnesses. But there are two decisions, in which the question of competency, as affected by religious belief, has been considered independently of the constitution. In the case of *Hunscom* v. *Hunscom,* 15 Mass. 184, it was held, that the professed disbelief of a witness in a future state of existence was not an objection to his competency, but only to his credibility ; and the same principle is somewhat vaguely and indistinctly recognized in the case of the *Comm'th* v. *Buzzell,* 16 Pick. 153.

If these authorities are sufficient to show, that a professed unbeliever in a future state of existence is a competent witness, then the judge was right in rejecting the evidence offered by the plaintiff; inasmuch as the offer of the plaintiff was an entire proposition, to prove either that the witness did not believe in God, or that he did not believe in a future state of rewards and punishments. The latter part of the proposition was no ground of objection to the competency, and the whole must therefore be overruled ; for, otherwise, the defendants would have had it in their power, by coupling together the two propositions, to make an objection available against the competency of the witness, which, by law, could only affect his credibility.

A more enlarged view of the subject will lead to the same conclusion. What ought really to be the true test of competency, if it be not a belief simply in the obligation of an oath, whatever may be the witness's religion, — whether christian, pagan, or mahometan, — or whether he disbelieves

them all ? This seems to be the principle really decided in the cases of *Omichund* v. *Barker*, (1 Atk. 21, and Willes, 538,) and of *Curtis* v. *Strong*, (4 Day, 51 ;) according to which, the competency of a witness does not depend upon his belief in the punishment for the violation of an oath in this life or in the life to come ; or in the infliction of that punishment by the direct interposition of a supreme being, or by the established laws of nature ; but in a belief, that if he swears falsely, he will be punished therefor, either here, or elsewhere, or in some manner, and at some time.

It has been argued, against admitting an atheist to testify, that upon him the ceremony of making a solemn appeal to a supreme being, in whose existence he has no belief, would be ineffectual to bind his conscience to speak the truth. But this appeal is not the only sanction. In the ceremony of affirmation, which is now substituted by statute for the oath in many cases, there is no such appeal ; the witness speaks under the pains and penalties of perjury only.

The rule, as stated by Mr. Greenleaf, in his treatise on evidence, § 369, is, that a witness is competent to testify, if he believes in the being of God, and a future state of rewards and punishments. But the author adds, immediately, that the substance of it all is, that the witness " must believe that divine punishment will be the certain consequence of perjury ; " and that it is not material whether " the witness believes that the punishment will be inflicted in this world or in the next." The word " divine," as characteristic of punishment, will convey different ideas to different persons ; and no two, perhaps, will understand it precisely alike. The rule, then, when reasonably expressed, is only this : — that the witness must believe in an accountability, and that perjury will surely be punished by some supreme power.

If it had been proposed to prove, that the witness did not believe in the obligation of an oath ; or was destitute of all sense of religious obligation ; or did not recognize any retributive justice emanating from a superior power ; it might have been proper to exclude him from testifying. But, even in

that case, it may be doubted, whether it would not be more in accordance with the boasted freedom of our institutions, and tend more to promote justice among men, to abandon all these tests as to competency, and to let the speculative belief or disbelief of a witness, in matters of religion, affect his credibility alone.

*Dewey*, in reply. The argument from the constitution is altogether against, rather than in favor of, the allowing of an atheist to testify. The second article of the bill of rights, which contains the clause relied on for the defendants, commences with the declaration, that "It is the right as well as the duty of all men in society, publicly, and at stated seasons, to worship the supreme being, the great creator and preserver of the universe." Then follows the clause which was read on the other side : "And no subject shall be hurt, molested, or restrained, in his person, &c., for worshipping God in the manner and season most agreeable to his own conscience," &c. ; thus showing, conclusively, that the latter part of the article referred to those only who believed in and worshipped a supreme being, and not to those who did neither the one nor the other. The constitution in this article makes or rather looks upon it as among the highest of social duties, to worship the supreme being. How, then, can it be repugnant to the principles of the constitution, to declare that one, who habitually disregards so great a social duty, is wholly unworthy of belief in a court of justice ?

WILDE, J. At the trial of this cause, the defendants called a witness, to whose competency the plaintiff objected, on the ground that he did not believe in the existence of a God, or in a state of future rewards and punishments, and offered to prove the same by witnesses.

It has been argued, that this mode of proof was not admissible, the general rule of evidence being, that a witness shall not be permitted to disqualify himself by declarations not under oath, made out of court, as they might be untruly made for that purpose. But it has been frequently held, that this mode of proof is admissible, and is an exception to the gen-

eral rule, from the necessity of the case ; it being deemed unreasonable that the party objecting should be restricted to the testimony of the witness on the *voir dire*, as the objection supposes he has no regard to the sanction of an oath ; and if so, his declarations made under oath. are of no more weight than those made seriously when not under oath. 1 Greenl. Ev. § 370. But the evidence of such declarations should be received cautiously. Remarks and avowals of belief, or disbelief, may be made in the heat of argument, and for the purpose of discussion, which may be no sure indications of the real belief or disbelief of the party. So the witness, after having made such declarations, may have changed his opinions ; which, perhaps, could not be proved, unless he should be allowed to testify. But notwithstanding these objections, which have some weight, it is well settled, that the avowal of a witness of his religious belief or disbelief may be proved, like any other fact.

It has also been argued, that the disbelief of a future state of existence after death is no objection to the competency of a witness, provided he believes in his accountability to God, and that God will punish him in this life for false swearing or other evil deeds. In the case of *Hunscom* v. *Hunscom*, 15 Mass. 184, it was held, that a mere disbelief in a future existence went only to a witness's credibility. Whether such was the evidence offered in this case, does not distinctly appear ; it might be that the witness could be proved to disbelieve a future state of rewards and punishments in this life. But, however this may be, it is immaterial in the decision of this case ; for 'if such disbelief would not disqualify the witness, the plaintiff should have been permitted to prove that he disbelieved the existence of a God. On this point the law is extremely clear, and so it has been held from time immemorial. Lord Coke held that an infidel — meaning a person not believing the scriptures of the old and new testaments — was an incompetent witness. But this opinion of lord Coke has not been sustained by later authorities, and seems never to have been well founded. The question was very fully

considered in the case of *Omichund* v. *Barker*, 1 Atk. 21, and Willes, 538. And it was settled, in that case, that an infidel in general could not be excluded from being a witness, if he believed in a God and in a future state of rewards and punishments ; but if he did not so believe, he ought not .to be admitted as a witness. And all the authorities agree, that an atheist, who disbelieves in the existence of a God, who is " the rewarder of truth and avenger of falsehood," cannot be permitted to testify. It would indeed seem absurd, to administer to a witness an oath, containing a solemn appeal for the truth of his testimony, to a being in whose existence he has no belief. 1 Greenl. Ev. §§ 368, 369, and the cases there cited ; 3 Dane's Abr. *c.* 98, *art.* 2 ; *Wakefield* v. *Ross*, 5 Mason, 18 ; *Jackson* v. *Gridley*, 18 Johns. 98 ; *Curtis* v. *Strong*, 4 Day, 51.

But the defendants' counsel contend, that this rule of law has been abrogated by the constitution, part 1st, art. 2d, which provides, " that no subject shall be hurt, molested, or restrained in his person, or estate, for worshipping God in the manner and season most agreeable to the dictates of his own conscience, or *for his religious profession or sentiments.*"

In the opinion of the court, this article has no reference to atheists, and to their competency as witnesses. It was intended to prevent persecution by punishing any one for his religious opinions, however erroneous they might be. But an atheist is without any religion, true or false. The disbelief in the existence of any God, is not a religious, but an anti-religious, sentiment. If, however, it were otherwise, the rejection of a witness for such a disbelief or sentiment, as incompetent, would be no violation of this article of the constitution. It is not within its words or meaning. It would not hurt, molest, or restrain him, in his person, liberty, or estate. We are therefore very clearly of the opinion, that the witness was incompetent, and ought not to have been allowed to testify.                    *Exceptions sustained.*